UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CELLULAR 7, INC., ET AL. | CIVIL ACTION |
| VERSUS | No. 20-192 |
| NEW CINGULAR WIRELESS PCS, LLC, ET AL. | SECTION I |

## ORDER & REASONS

Before the Court is plaintiffs Cellular 7, Inc. ("Cellular 7"), Alvin E. Kimble ("Kimble"), and I.V. Jeansonne's ("Jeansonne") (collectively, the "plaintiffs") motion[1] to remand the above-captioned matter to Louisiana state court. For the following reasons, the motion is granted.

### I.

Kimble and Jeansonne are partners in Cellular 7 who each own half of Cellular 7's voting interests.[2] Cellular 7 and New Cingular PCS, LLC ("New Cingular") together form Louisiana RSA No. 7 Cellular General Partnership (the "Partnership").[3] New Cingular owns 66.7% of the interest in the Partnership, while Cellular 7 owns the remaining 33.3%.[4]

---

[1] R. Doc. No. 10.
[2] R. Doc. No. 1-1, at 8 ¶¶ 12–13.
[3] *Id.* at 7 ¶ 8.
[4] R. Doc. No. 1-1, at 7 ¶ 10; R. Doc. No. 13, at 3–4.

The Partnership was formed in 1989 to provide cellular service.[5] The Partnership Agreement (the "Agreement") governs the Partnership.[6] Article X of the Agreement restricts each partner's assignment of partnership interests to non-affiliates by requiring the transferor to both obtain consent from the other partner and, pursuant to a right of first refusal provision, offer its interest first to the other partner.[7] The Agreement also contains an indemnification provision, which requires a partner who violates the right of first refusal provision to indemnify both the Partnership and the non-violating partner against "any and all loss, attorney's fees, damage or expense arising, directly or indirectly," from such violation.[8]

On December 4, 2019, Kimble and Jeansonne, along with their corporation, Cellular 7, filed suit in the 21st Judicial District Court for the Parish of Tangipahoa against New Cingular and the Partnership, seeking two declarations: first, a declaration that the right of first refusal provision does not apply "to any gratuitous testamentary bequest of shares in Cellular 7 to [Kimble and Jeansonne's] family members or trust for the benefit of any such family members," nor to "any subsequent gratuitous distribution of such shares to the trust beneficiaries under the terms of

---

[5] *Id.*; R. Doc. No. 13, at 3.
[6] R. Doc. No. 1-1, at 7 ¶ 6; R. Doc. No. 13, at 4.
[7] R. Doc. No. 1-1, at 9–10 ¶ 18 (citing Agreement, Art. 10.1); R. Doc. No. 13, at 4.
[8] R. Doc. No. 1-1, at 11 ¶ 18 (citing Agreement, Art. 10.2); R. Doc. No. 13, at 4. New Cingular cites the indemnification provision throughout its filings as Art. 10.3 of the Agreement. *See, e.g.,* R. Doc. No. 13, at 4. The discrepancy is immaterial, however, as all parties agree on the language of the indemnification provision. *Compare* R. Doc. No. 1-1, at 11 ¶ 18, *with* R. Doc. No. 13, at 4. The Court will refer to the indemnification provision as Art. 10.2, as it is labeled in plaintiffs' Petition for Damages. R. Doc. No. 1-1, at 11 ¶ 18.

2

the trust"; and second, a declaration that the Partnership is not entitled to indemnification from Cellular 7 based upon any such transfers of interest.[9]

As stated previously, in the event that plaintiffs' transfers are violative of the Agreement, both the Partnership *and* New Cingular, the non-violating partner, have a right to seek indemnification from Cellular 7.[10] However, plaintiffs' second claim only seeks a declaration that the proposed transfers would not trigger the *Partnership's* right to indemnification—plaintiffs seek no declaratory relief with respect to New Cingular's right to indemnification from Cellular 7.[11] Accordingly, plaintiffs' second claim for declaratory relief is only against the Partnership.

On January 17, 2020, New Cingular removed the case to this Court on the basis of federal diversity jurisdiction.[12] Plaintiffs filed the instant motion on February 17, 2020, arguing that the Court does not have federal diversity jurisdiction because plaintiffs and the Partnership are all citizens of Louisiana.[13] New Cingular argues, in response, that diversity jurisdiction does exist because the Partnership is a

---

[9] R. Doc. No. 1-1, at 16 ¶ 35.
[10] R. Doc. No. 1-1, at 11 ¶ 18 (citing Agreement, Art. 10.2); R. Doc. No. 13, at 4.
[11] *See* R. Doc. No. 1-1 at 16 ¶ 35.
[12] *See* R. Doc. No. 1.
[13] R. Doc. No. 10-1, at 3. For the purpose of diversity jurisdiction, partnerships and limited liability corporations are citizens of every state in which one of their partners or members is a citizen. *Moss v. Princip*, 913 F.3d 508, 514 (5th Cir. 2019) (partnerships); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (limited liability corporations). Kimble and Jeansonne and, therefore, Cellular 7, are all citizens of Louisiana. R. Doc. No. 1-1, at 6 ¶¶ 1–3. Accordingly, the Partnership is also a citizen of Louisiana. There are inconsistencies in the pleadings as to the citizenship of New Cingular. *See id.* at 6 ¶ 4 (identifying Delaware, Georgia, and Texas); R. Doc. No. 10-1, at 3 & R. Doc. No. 13, at 3 (identifying Delaware, Georgia, New York, New Jersey, and Texas). The discrepancy is immaterial, however, as the parties do not dispute that New Cingular is not a citizen of Louisiana.

3

nominal party and is fraudulently joined and, therefore, the Partnership's citizenship must be disregarded for the purpose of establishing federal diversity jurisdiction.[14]

## II.

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending," unless Congress provides otherwise. Jurisdictional facts supporting removal are assessed at the time of removal. *Louisiana v. American Nat'l Prop. Cas. Co.*, 746 F.3d 633, 636–37 (5th Cir. 2014). "The removing party bears the burden of establishing that federal jurisdiction exists." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Smith v. Bank of America Corp.*, 605 F. App'x 311, 313–14 (5th Cir. 2015) (quoting *Manguno v. Prudential Prop. & Cas. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)).

Pursuant to 28 U.S.C. § 1332, a district court has original jurisdiction over cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and "all persons on one side of the controversy [are] citizens of different states than all persons on the other side at the time the complaint was filed." *Soaring Wind Energy, L.L.C. v. Catic USA Inc.*, 946 F.3d 742, 750 (5th Cir. 2020) (internal quotation marks and citation omitted). It is uncontested that the amount in controversy exceeds

---

[14] R. Doc. No. 13, at 5–6.

4

$75,000.[15] Whether the Partnership is an improperly joined and/or nominal party is, therefore, determinative of whether the Court has federal diversity jurisdiction over this matter.

The parties disagree as to whether the test for improper joinder is the same for that of determining whether a defendant is nominal.[16] Indeed, precedent within the Fifth Circuit on the issue is unclear. *Compare Lassberg v. Bank of Am., N.A.*, 660 F. App'x 262, 266 (5th Cir. 2016) (stating two separate tests for determining improper joinder and nominal parties), *and Alford v. Chevron U.S.A. Inc.*, No. 13-5457, 2014 WL 37600, at *5 (E.D. La. Jan. 6, 2014) (Vance, J.) (noting that the doctrine of improper joinder is implicated when a plaintiff improperly joins an in-state party in an effort to defeat diversity jurisdiction, whereas the nominal party doctrine determines whether a defendant must consent to removal), *with Farias v. Bexar Cty. Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 871 (5th Cir. 1991) (applying the test for improper joinder to the removing defendant's claim that the nonmoving defendants were nominal parties), *and Badeaux v. Scott*, No. 98-0021, 1998 WL 246702, at *3 (E.D. La. May 13, 1998) (Lemmon, J.) (noting that "in the Fifth Circuit, the test for establishing that a party is a 'nominal' party is the same as the test for establishing that a party has been fraudulently joined").

---

[15] R. Doc. No. 13, at 11.
[16] R. Doc. No. 10-1, at 6; R. Doc. No. 13, at 5.

Although the improper joinder and nominal party analyses involve many of the same considerations, the Court will analyze the tests separately, as more recent precedent suggests. *See Lassberg*, 660 F. App'x at 266; *Alford*, 2014 WL 37600, at *5.

**A. Improper Joinder**

*i.*

Under the improper joinder doctrine, "the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity." *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009). "A defendant is improperly joined if the . . . party [moving for remand] establishes that (1) the plaintiff *has* stated a claim against a diverse defendant that he fraudulently alleges is nondiverse, or (2) the plaintiff *has not* stated a claim against a defendant that he properly alleges is nondiverse." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016) (citation omitted).

Because the Partnership is, indisputably, nondiverse, only the latter option is relevant. As the party seeking removal based on improper joinder of a nondiverse defendant, New Cingular bears the "heavy burden" of establishing that plaintiffs have failed to state a claim against the Partnership. *Smallwood v. Ill. Cent. R.R. Co.,* 385 F.3d 568, 576 (5th Cir. 2004) (en banc), *cert. denied* 544 U.S. 992 (2005). "In doing so, [New Cingular] must demonstrate 'that there is no possibility of recovery by . . . plaintiff[s] against [the Partnership], which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff[s] might be

6

able to recover against [the Partnership].'" *Int'l Energy Ventures*, 818 F.3d at 199–200 (quoting *Smallwood,* 385 F.3d at 573); *see also Lassberg*, 660 F. App'x at 266.

In making this determination, the Court "conduct[s] a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant."[17] *Probasco v. Wal-Mart Stores Texas, L.L.C.*, 766 F. App'x 34, 36 (5th Cir. 2019), *reh'g denied* (Apr. 24, 2019) (quoting *Smallwood*, 385 F.3d at 573). "In making this determination regarding improper joinder, a court does not 'decide whether the plaintiff will actually or even probably prevail on the merits, but looks only for a reasonable possibility that the plaintiff may do so.'" *Morris v. JPMorgan Chase & Co.*, No. 14-2932, 2014 WL 7404121, at *4 (N.D. Tex. Dec. 30, 2014) (quoting *Dodson v. Spiliada Mar. Corp.,* 951 F.2d 40, 42 (5th Cir. 1992) (citations omitted)) (alterations omitted).

"[T]he existence of even a single valid cause of action against [an] in-state defendant . . . requires remand of the entire case to state court." *Gray ex rel. Rudd v. Beverly Enterprises-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004). "If a court determines that a nondiverse party has been improperly joined to defeat diversity,

---

[17] A district court may, instead, "'pierce the pleadings' and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim." *Lassberg*, 660 F. App'x at 266 (internal quotation marks and citation omitted). However, such an inquiry is improper here, where New Cingular has not alleged that plaintiffs have "misstated or omitted discrete facts that would determine the propriety of joinder." *See Alviar v. Lillard*, 854 F.3d 286, 291 n.2 (5th Cir. 2017) (internal quotation marks and citation omitted).

that party *must* be dismissed without prejudice." *Probasco*, 766 F. App'x at 36 (internal quotation marks and citation omitted).

The issue before the Court is, therefore, whether plaintiffs have stated a claim against the Partnership—in other words, whether New Cingular has demonstrated that there is no possibility of recovery by plaintiffs against the Partnership. To satisfy the federal pleading standard pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must set forth well-pleaded factual allegations that "raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547).

A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

*ii.*

New Cingular argues that plaintiffs' second claim, the only claim against the Partnership—seeking a declaration that the Partnership is not entitled under Article X to indemnification from Cellular 7 based upon plaintiffs' proposed transfers of

interest—provides no possibility of recovery by plaintiffs against the Partnership and, therefore, the Partnership has been improperly joined.[18]

As stated previously, Article 10.2 indemnifies the Partnership and non-violating partner against any "loss, attorney's fees, damages or expense arising, directly or indirectly, as a result of any transfer or purported transfer in violation of . . . Article X."[19] Plaintiffs seek declarations that (1) their proposed transfers do not violate the right of first refusal provision in the Agreement, and that (2) the Partnership is, therefore, not entitled to any indemnification from Cellular 7 based upon such transfers.[20]

New Cingular contends that two contingencies must be met before the Partnership's right to indemnification is triggered: (a) a transfer in violation of the Agreement that (b) causes loss to the Partnership.[21] Because plaintiffs fail to allege that there is any immediate possibility of either event occurring and, in fact, there is no possibility of both events occurring, New Cingular argues, plaintiffs' second claim for declaratory relief—plaintiffs' only claim against the Partnership—is unripe and, therefore, plaintiffs have failed to state a claim against the Partnership.[22]

New Cingular argues that the Court's ruling as to the first declaration—whether plaintiffs' proposed transfers violate the Partnership Agreement—will guarantee that plaintiffs will not engage in a wrongful transfer and, therefore, the

---

[18] R. Doc. No. 13, at 9–10.
[19] R. Doc. No. 1-1, at 11 ¶ 18 (citing Agreement, Art. 10.2).
[20] *Id.* at 16 ¶ 35.
[21] R. Doc. No. 13, at 9–10.
[22] *Id.* at 10.

9

first contingency, a transfer in violation of the Partnership Agreement, will never occur.[23] If the Court declares that plaintiffs' proposed transfers do not violate the terms of the Agreement—that is, the right of first refusal does not apply to such transfers—then the Partnership's right to indemnification will not be triggered because there will be no violation of the Agreement.[24] By contrast, if the Court declares that plaintiffs' proposed transfers *would* violate the Partnership Agreement, New Cingular argues, plaintiffs will not make such transfers without first adhering to the right of first refusal provision and, once again, the Partnership's right to indemnification will not be triggered.[25] Absent the likelihood that the Partnership's indemnity right will be triggered, New Cingular contends, plaintiffs' second claim for declaratory relief, their only claim against the Partnership, is not ripe for review.[26]

New Cingular further argues that even if the Court declares that plaintiffs' proposed transfers would violate the Agreement and plaintiffs still proceed with such transfers, thereby violating Article 10.2, the Partnership's indemnity right will still not be triggered because the Partnership would not sustain any loss as a result of such transfers.[27] New Cingular asserts that plaintiffs' wrongful transfers would cause only New Cingular, not the Partnership, to incur attorneys' fees and other losses and,

---

[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.* at 8, 10.

10

accordingly, the Partnership would never be able to invoke its indemnity right because it will have no losses to recover.[28]

Plaintiffs argue in response that the Partnership was not improperly joined, because the Partnership holds an independent right to seek indemnity against Cellular 7 and, in fact, plaintiffs could have chosen to bring suit *only* against the Partnership.[29] Likewise, the Partnership alone could sue Cellular 7 to recover fees and costs incurred as a result of the transfers in violation of the Partnership Agreement.[30]

Plaintiffs further argue that it is possible, and likely, that the Partnership would sustain losses as a result of wrongful transfers and, absent a declaration to the contrary, could sue Cellular 7 to indemnify itself against such losses.[31] Plaintiffs argue that New Cingular's conclusion that the Partnership will never sustain any losses as the result of wrongful transfers is erroneous because such a conclusion would render the Partnership's right to indemnification superfluous and illusory, as the Partnership *only* has the right to indemnification from transfers in violation of the Partnership Agreement, *not* for any loss sustained as the result of a violation of any other provision of the Agreement.[32] Plaintiffs point out that because the Partnership has the right to recover all attorney's fees and expenses arising both directly *and* indirectly as a result of "any transfer or purported transfer" in violation

---

[28] *Id.* at 8.
[29] R. Doc. No. 10-1, at 8–9.
[30] *Id.* at 9.
[31] R. Doc. No. 21, at 5–6.
[32] *Id.* at 4.

11

of the right of first refusal provision, the Partnership could attempt to seek indemnification for expenses that arise in the future as a result of wrongful transfers, such as from a dispute in voting involving the new partner or a dispute related to accessing the Partnership's financial statements.[33]

### *iii.*

As a preliminary matter, the Court notes that ripeness is an issue of subject matter jurisdiction—not whether plaintiffs have failed to state a claim—and, therefore, New Cingular's argument as to the ripeness of plaintiffs' claim against the Partnership would not be properly addressed through a Rule 12(b)(6) inquiry. *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010) ("Ripeness is a component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet justiciable.") (citation omitted); *see* Fed. R. Civ. P. 12(b)(1).

However, as having subject matter jurisdiction over a claim is a prerequisite to making any determination based on the claim's merits, plaintiffs cannot state a claim for relief against the Partnership if the Court would not have jurisdiction over such claim. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Accordingly, if plaintiffs' second claim, the only claim against the Partnership, is not ripe for review, there is no reasonable basis for the Court to predict that plaintiffs might be able to recover against the Partnership.[34]

---

[33] *Id.* at 5.

[34] New Cingular does not argue that plaintiffs fail to state a claim against the Partnership under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, the Court will only address whether plaintiffs' claim against the Partnership could survive a Rule 12(b)(1) motion to dismiss.

12

"[A] claim must be ripe for a federal court to have jurisdiction, . . . and a court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Lower Colorado River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 924 (5th Cir. 2017) (internal quotation marks and citations omitted). "In determining whether a case is ripe, there are two key considerations: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Id.* (quoting *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)). "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Orix Credit*, 212 F.3d at 895 (internal quotation marks and citations omitted).

As the Fifth Circuit has explained:

> In the declaratory judgment context, whether a particular dispute is ripe for adjudication turns on whether a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests. Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis. Notably, the threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based. The fact that future litigation may be contingent upon certain factors occurring does not necessarily defeat jurisdiction over a declaratory judgment action, but a district court must take into account the likelihood that these contingencies will occur. Accordingly, we have described the ripeness inquiry as focusing on whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention.

*Lower Colorado River Auth.*, 858 F.3d at 924 (internal quotation marks and citations omitted).

New Cingular does not dispute that plaintiffs' first claim for declaratory relief is ripe for review. As stated previously, plaintiffs Kimble and Jeansonne are seventy-

four and eighty-one years of age, respectively, are in the midst of preparing their estates, and intend to bequeath their interests in Cellular 7 to trusts for the benefit of their family members.[35] Plaintiffs allege that in 1998, New Cingular's predecessor-in-interest confirmed in a signed written agreement that plaintiffs Kimble and Jeansonne could leave their interests in Cellular 7 to their heirs without triggering the right of first refusal.[36] New Cingular allegedly sought to reverse its predecessor-in-interest's interpretation of the Partnership Agreement several years later, and expressed in a series of letters between 2010 and 2011 that it now took the position that the right of first refusal provision applies to any bequest of shares in Cellular 7 by Kimble and Jeansonne to their heirs.[37]

Given New Cingular's position with respect to the bequest of shares, and the fact that it controls the majority of voting interest in the Partnership, it is very likely that if Kimble and Jeansonne bequeathed their shares to their heirs, the Partnership would seek to invoke the indemnity provision. Therefore, plaintiffs' first claim is ripe for review. *See Venator Grp. Specialty, Inc. v. Matthew/Muniot Family, LLC.*, 322 F.3d 835, 839–40 (5th Cir. 2003) (holding that a declaratory judgment action was ripe

---

[35] R. Doc. No. 1-1, at 13; R. Doc. No. 21, at 6.
[36] R. Doc. No. 1-1, at 12.
[37] *Id.* New Cingular does not dispute these facts nor argue that they should not be considered for purposes of determining subject matter jurisdiction. *See Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012) (holding that "[i]n assessing jurisdiction, the district court is to accept as true the allegations and facts set forth in the complaint," but also noting that "the district court is empowered to consider matters of fact which may be in dispute") (internal quotation marks and citations omitted).

14

even though it sought a ruling on the effect of a lease agreement term that had not yet been triggered, because the lessor was "very likely" to invoke the right at issue).

However, New Cingular essentially argues that because the outcome of the second claim will be dictated by the outcome of the first claim, the second claim can never be ripe for review, because a wrongful transfer—the subject of the first claim—will never occur, as the Court will declare whether plaintiffs' proposed transfers are wrongful and plaintiffs will proceed accordingly.

The Court disagrees and finds that plaintiffs' second claim is ripe for review. The only remaining questions are purely legal—whether plaintiffs' proposed transfers would violate the Agreement and, pursuant to the Agreement, whether plaintiffs would be responsible for indemnifying the Partnership as a result of such transfers. No further factual development is required, and a substantial controversy of sufficient immediacy and reality exists between plaintiffs and the Partnership, who have adverse legal interests. *See Orix Credit*, 212 F.3d at 895. Plaintiffs seek to engage in a transfer that may trigger the Partnership's right to indemnification and cause loss to the Partnership, and the Partnership has an interest in being indemnified against such loss.

New Cingular's argument that the Partnership will never suffer a loss as a result of the proposed transfers and, therefore, the Partnership has no real legal interest in being indemnified against such loss fails. Plaintiffs are correct that New Cingular's assertion that the Partnership could not sustain losses as a result of a transfer in violation of the Partnership Agreement would render the Partnership's

15

right superfluous and illusory. Such an interpretation is contrary to settled principles of contract interpretation. *See Sunline Commercial Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019) (citations omitted) ("The contract must . . . be read as a whole, giving meaning to each term and avoiding an interpretation that would render any term 'mere surplusage.'").[38] Furthermore, plaintiffs readily cite two realistic examples of indirect losses that the Partnership could potentially suffer in the future as a result of plaintiffs' transfers.

The ripeness of plaintiffs' second claim is further evidenced by the fact that plaintiffs could have filed suit against only the Partnership, seeking a declaration that the Partnership would not be entitled to indemnification based upon plaintiffs' proposed transfers, and the matter would have been ripe for review. Accordingly, there is a reasonable basis for the Court to predict that plaintiffs might be able to recover against the Partnership and, therefore, plaintiffs did not improperly join the Partnership. The Court will not disregard the Partnership's citizenship for purposes of diversity jurisdiction on the basis of improper joinder.

### B. Nominal Party

#### i.

New Cingular argues that the Partnership's citizenship must be disregarded for purposes of evaluating federal diversity jurisdiction because the Partnership is a nominal party.[39] New Cingular contends that because all partners are a party to this

---

[38] The Agreement provides that it is governed by Delaware law. R. Doc. No. 1-1, at 7 ¶ 9.
[39] R. Doc. No. 13, at 6–9.

16

litigation, the Partnership's interests are adequately represented and, therefore, it would be equitable for the Court to enter a final judgment in the Partnership's absence.[40] New Cingular further argues that because only New Cingular, not the Partnership, has an interest in enforcing the right of first refusal provision, and only New Cingular, not the Partnership, would incur losses in an effort to enforce such provision, New Cingular is the only interested party—not the Partnership.[41]

### *ii.*

Pursuant to 28 U.S.C. § 1446, "all defendants who have been properly joined and served must join in or consent to the removal of the action." However, there is an exception to this general rule—"nominal" or "formal" parties need not join in the removal petition. *In re Beazley Ins. Co.*, No. 09-2005, 2009 WL 7361370, at *4 (5th Cir. May 4, 2009) (quotation marks and citation omitted). A party to a complaint is "nominal" and thus disregarded for diversity purposes if "in the absence of [that party], the Court can enter a final judgment consistent with equity and good conscience, which would not be in any way unfair or inequitable." *Louisiana v. Union Oil Co. of California*, 458 F.3d 364, 366–67 (5th Cir. 2006) (internal quotation marks and citation omitted). "Nominal parties are generally those without a real interest in the litigation." *Legeaux v. Borg-Warner Corp.*, No. 16-13773, 2016 WL 6166166, at *2 (E.D. La. Oct. 24, 2016) (citing *Wolff v. Wolff*, 768 F.2d 642, 645 (5th Cir. 1985)) (Africk, J.). "If a removing defendant claims that a non-removing defendant is a

---

[40] *Id.* at 6.
[41] *Id.* at 8.

17

nominal party, the removing party bears the burden of proving such." *Tureaud v. Kephart*, No. 09-7269, 2010 WL 1254372, at *2 (E.D. La. Mar. 24, 2010) (Africk, J.).

### *iii.*

New Cingular's argument that the Partnership is a nominal party fails because the Partnership has a real interest in the litigation, and it would be inequitable to render a final judgment in its absence. The Partnership has an independent right to seek indemnification in the event that plaintiffs make transfers in violation of the first refusal provision, and such transfers could, as discussed previously, cause a direct or indirect loss to the Partnership.

Cases relied upon by New Cingular are easily distinguishable, as none of them involved a partnership that possessed an independent contract right to seek indemnification for losses that arose as a result of transfers in violation of the right of first refusal provision.[42] Therefore, New Cingular, the removing party, has not met its burden of proof and the Court will not disregard the Partnership's citizenship on the basis that it is a nominal party.

---

[42] *See id.* at 7 n.1. The two primary cases upon which New Cingular relies are also inapposite to the matter at hand, as the facts in those cases are distinguishable. *See Moss*, 913 F.3d at 519 (holding that a partnership was not an indispensable party because the partnership's presence in the suit "was not necessary to protect the partnership or any of the parties from prejudice," the partnership only played a passive role throughout the litigation, and the plaintiffs' interest in preserving a fully litigated judgment outweighed any interest of the partnership); *Wolff*, 768 F.2d at 646 (holding that the partnership was nominal because the partnership was in the process of dissolution, and transferring title to the partnership "would have been a formal and doubtless unnecessary act").

As plaintiffs and the Partnership are all citizens of Louisiana, the Court lacks subject matter jurisdiction over this matter and it must remand the case to Louisiana state court. 28 U.S.C. § 1332; *Soaring Wind Energy*, 946 F.3d at 750.

### III.

Accordingly,

**IT IS ORDERED** that plaintiffs' motion to remand is **GRANTED.**

New Orleans, Louisiana, March 19, 2020.

                                           **LANCE M. AFRICK**
                                 **UNITED STATES DISTRICT JUDGE**